**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **U.S. SECURITIES AND EXCHANGE** | ) | |
| **COMMISSION**, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **Civil Action No.:** |
| **CITY OF HARVEY, ILLINOIS and** | ) | |
| **JOSEPH T. LETKE** | ) | **Jury Trial Demanded** |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |
| | ) | |

_____

## COMPLAINT

Plaintiff U.S. Securities and Exchange Commission (the "Commission" or "SEC") alleges as follows:

## NATURE OF THE ACTION

1.     This case involves a scheme by Defendants the City of Harvey, Illinois (the "City of Harvey" or "Harvey") and Joseph T. Letke ("Letke") to misuse proceeds raised from investors in municipal bonds issued by Harvey.  From 2008 to the present, Harvey and its Comptroller, Letke, have engaged in a scheme to divert bond proceeds for improper purposes, including undisclosed payments to Letke.  As part of the scheme, Harvey made misrepresentations and omissions to investors about how bond proceeds would be used and the risks associated with investments in Harvey's municipal bonds.

2.     Defendants Harvey and Letke engaged in a fraudulent scheme, and Harvey made materially false and misleading statements, in connection with municipal

bond offerings by Harvey to bond investors for approximately $6 million in 2008 ("2008 Bond Offering"), for approximately $3 million in 2009 ("2009 Bond Offering") and for approximately $5 million in 2010 ("2010 Bond Offering").

3.     The purported purpose of the 2008, 2009 and 2010 Bond Offerings was to provide funding to develop and construct a Holiday Inn Hotel in Harvey ("Hotel Redevelopment Project"). These bonds were not general obligation bonds and were not to be repaid from the general coffers of Harvey.  Instead, they were limited obligation bonds.  Depending on the particular bond offering, the bonds were to be repaid from dedicated tax revenue streams such as Harvey's hotel-motel tax and sales tax revenue or incremental tax from the Tax Increment Financing District ("Harvey TIF District") Harvey created for the development and construction of the Hotel Redevelopment Project.

4.     Thus, it was important to bond investors that money raised from the bond offerings, consistent with the stated purpose, was actually used to fund the hotel development, since the amount of funds to repay the bonds derived from tax revenues would be materially affected by the funding and progress of the Hotel Redevelopment Project.

5.     Yet, unbeknownst to bond investors and contrary to representations in Official Statements and other documents connected to the 2008, 2009 and 2010 Bond Offerings, from in or about 2009 through in or about 2011, Harvey officials improperly diverted at least $1.7 million of bond proceeds from these offerings into the general operation accounts of Harvey to pay the City's operation costs, including payroll.  Letke, Harvey's comptroller, also received approximately $269,000 in undisclosed payments

derived from bond proceeds and other proceeds earmarked for the Hotel Redevelopment

Project. Bond investors were thus materially misled about the purpose and risks of the

bonds they purchased from Harvey

6.     During the relevant period, Defendant Letke was the Comptroller of

Harvey, for which he and a firm he controlled, Letke & Associates, Inc., received

$1,080,403. In addition, Defendant Letke and his firm Letke & Associates served as a

financial advisor to Harvey in connection with the 2008, 2009 and 2010 Bond Offerings.

7.     Harvey intends to make a new issuance of limited obligation bonds as

early as June 25, 2014 (the "2014 Proposed Bond Offering"). The draft offering

documents for the 2014 Proposed Bond Offering make materially misleading statements

about the intended use of bond proceeds and the risks of investing in Harvey's municipal

bonds, while omitting to state the bond proceeds from the 2008, 2009, and 2010 Bond

Offerings already had been misused.

8.     Through the activities alleged in this Complaint, the Defendants, directly

or indirectly, have engaged in transactions, acts, practices or courses of business which

constitute violations of Section 17(a) of the Securities Act of 1933 ("Securities Act") [15

U.S.C. § 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange

Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] promulgated

thereunder.

## JURISDICTION AND VENUE

9.     The Commission brings this action pursuant to the authority conferred by

Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and Section 21(d) of the

Exchange Act [15 U.S.C. § 78u(d)] seeking to restrain and enjoin permanently the

Defendants from engaging in the acts, practices, transactions and courses of business alleged herein, and for such other equitable relief as may be appropriate or necessary for the benefit of investors.

10.     The Commission also seeks a final judgment ordering Defendant Letke to disgorge his ill-gotten gains and pay prejudgment interest thereon, and ordering Letke to pay civil money penalties pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] and Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)].

11.     The Commission also seeks a temporary restraining order prohibiting Harvey from offering or selling its own municipal securities, and permanent injunctive relief enjoining Harvey from offering or selling its own municipal securities for a period of five years, unless it first retains an Independent Consultant appointed by the Court to review Harvey's municipal security disclosure policies and procedures, and Harvey's procedures, controls and personnel for the proper use of bond proceeds, and implements any of the Consultant's recommendations for improvement.

12.     The Commission also seeks to temporarily restrain, and permanently enjoin, Defendant Letke from participating in any capacity in a municipal securities offering.

13.     This Court has jurisdiction over this action, and venue lies in this District, pursuant to Sections 20(d) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(d) and 77v(a)] and Sections 21(d) and 27 of the Exchange Act [15 U.S.C. §§78u(d) and 78aa]. The Defendants, directly or indirectly, singly or in concert, have made use of the means or instruments of transportation or communication in, and the means or instrumentalities of, interstate commerce, or of the mails, in connection with the transactions, acts,

practices, and courses of business alleged herein.  These transactions, acts, practices and courses of business occurred in the Northern District of Illinois, where the City of Harvey is located and where Letke resides.

14.     Defendants have, directly and indirectly, made, and are making, use of the mails, and of the means and instrumentalities of interstate commerce, in connection with the transactions, acts, practices and courses of business alleged in this Complaint.

15.     There is a reasonable likelihood that Defendants will, unless enjoined, continue to engage in the transactions, acts, practices and courses of business set forth in this Complaint, and transactions, acts, practices and courses of business of similar purport and object.

## THE DEFENDANTS

16.     **City of Harvey, Illinois** is located in southern Cook County, Illinois, about 20 miles south of downtown Chicago.  The City was organized on June 18, 1891 and is a "body politic and corporate" operating under the Illinois Municipal Code.  It is governed by a City Council, comprised of a mayor, and six alderman elected from separate wards for four year terms.

17.     **Joseph T. Letke**, age 55, resides in Frankfort, Illinois.  He has been the comptroller for the City of Harvey, Illinois for at least six years and in June 2008 incorporated a number of limited liability companies relating to the Hotel Redevelopment Project, including Harvey Hotel Properties and others.

## FACTS

**A.     Letke, His Business, and His Relationship to the City of Harvey**

5

18.     Letke is a certified public accountant who is the principal shareholder of several professional service businesses, including Alli Financial and Public Funding Enterprises.  Alli Financial was formed on May 1, 2013, as a successor corporation to Letke & Associates.  Letke also formed Public Funding Enterprises and Public Funding Group, LLC, which both were registered municipal advisors and provided financial advisor services regarding the issuance of municipal bonds to the City of Harvey and other municipalities.

19.     Alli Financial provides  accounting  and  financial  consulting services to private and municipal clients, mostly in the south suburbs of Chicago. Letke serves as the comptroller for several of these municipalities, including the City of Harvey, and is responsible for the accounting and financial reporting of the municipalities in which he holds that position, as well as advising on the municipalities' revenues, expenditures and general financial condition.  Alli Financial has accountants onsite at several municipalities to provide accounting and comptroller services, and Alli Financial normally bills the municipalities on an hourly basis.

20.     During the period 2008 to 2010, the City of Harvey has paid Letke and/or his businesses a total of approximately $1.08 million for work as Harvey's Comptroller and for bookkeeping.

21.     Letke and/or his businesses also received disclosed compensation totaling approximately $547,000 in his role as financial advisor to Harvey for 2008, 2009, and 2010 municipal bond offerings, as more fully set forth below.

22.     Additionally, as set forth below, Letke and/or his businesses received approximately $269,000 in undisclosed compensation from the developer of the Hotel

Redevelopment Project (as more fully described below) or businesses the developer controlled.  Letke served as an accountant for this developer during the pendency of the project.

23.     In sum, from 2008 through 2010, Letke and/or his businesses received at least $1.9 million relating to the City of Harvey.  Further, Letke and his businesses have continued to perform work for Harvey, and have been compensated for this work, from 2011 through the present.

**B.     The City of Harvey's Issuance of 2008 Bonds**

24.     In August 2008, Harvey conducted a municipal bond offering (the "2008 Bond Offering") to sell $6,025,000 of Hotel-Motel Tax Revenue Bonds, Series 2008A (the "2008 Bonds").

25.     As part of the 2008 offering, the City and Developer entered into a Development Agreement on August 25, 2008 (the "2008 Development Agreement"). The 2008 Development Agreement stated that the total cost of the Hotel Redevelopment Project was estimated to be $23 million and that the Developer would provide equity "necessary to complete the Project."  The Agreement also stated that, without the City's prior consent, no liens could be placed on the Project and no affiliate of the Developer could receive any City Funds, directly or indirectly, for work done, services provided or material supplied for the Project.

26.     As part of the 2008 Bond Offering, Harvey provided to potential investors an Official Statement ("2008 Official Statement") with information regarding the offering.  The 2008 Official Statement was signed by Harvey's Mayor and City Clerk on behalf of Harvey.

27.     The 2008 Official Statement stated that the 2008 Bonds were being issued to finance: (i) a portion of the acquisition by the Developer of the project, Harvey Hotel Properties (the "Developer"), of a parcel of property at 17040 South Halsted Street, Harvey, Illinois ("Property"); (ii) the rehabilitation of the facilities located on the Property "to provide for a full-service hotel and conference center" which was expected to operate as a Holiday Inn; and (iii) to pay for administrative, financing, legal and other costs associated with the 2008 Bond Offering.  The cover page of the 2008 Official Statement stated in pertinent part:

> The Bonds are being issued for the purposes of…financing costs of the Project described in this Official Statement, and paying incidental expenses associated with the issuance of the Bonds….

28.     The Project for which the City of Harvey was issuing the 2008 Bonds was the acquisition and rehabilitation of facilities on the Property within the City of Harvey. According to the 2008 Official Statement, the Property would be improved with a full-service Holiday Inn hotel and conference center which would include, among other things, 239 rooms, a restaurant and lounge, an indoor pool, and 10,500 square feet of meeting space.

29.     The 2008 Official Statement estimated that of the $6.025 million expected to be raised through the issuance of the 2008 Bonds, approximately $5.4 million would be used for a deposit into a fund for the Hotel Redevelopment Project and approximately $624,000 would be used for issuance costs, including the underwriter's compensation.

30.     The 2008 Bonds were not general obligation bonds.  In other words, the 2008 Bonds were not to be repaid to investors from the general coffers of Harvey.

31.     Instead, according to the 2008 Official Statement, the bonds were payable solely from hotel-motel tax and sales tax revenue.  On the front page of the 2008 Official Statement, in bold, capitalized type, the 2008 Official Statement represented in pertinent part: "The Bonds are not general obligations of the City, notwithstanding any provision or reference contained in this Official Statement, the Series 2008 A Ordinance, or any other bond document or transaction document; the Bonds shall be special limited obligations of the City.  The Bonds are payable solely from Hotel-Motel Tax and Sales Revenues."

32.     After receiving Harvey's representations in the 2008 Official Statement about how proceeds from the 2008 Bond Offering would be used, and how tax revenues would be generated to repay bondholders, investors purchased a total of $6.025 million of 2008 Bonds.

**C.     The City of Harvey's Issuance of 2009 Bonds**

33.     In or about August 2009, the City of Harvey conducted a municipal bond offering (the "2009 Bond Offering") to sell $3,000,000 of Series 2009A Bonds (the "2009 Bonds").

34.     As part of the 2009 Bond Offering, the City and Developer entered into a Redevelopment Agreement dated June 22, 2009 ("2009 Redevelopment Agreement").  The 2009 Redevelopment Agreement again stated that, without the City's prior consent, no liens could be placed on the Project and no affiliate of the Developer could receive any City Funds, directly or indirectly, for work done, services provided or material supplied for the Hotel Redevelopment Project.

35.     As part of the 2009 Bond Offering, the City of Harvey provided to potential investors a Bond Purchase Agreement as well as a Tax Exemption Certificate ("2009 Tax Exemption Certificate") with information regarding the offering.  Harvey's Mayor signed both documents on behalf of the City.

36.     The 2009 Tax Exemption Certificate stated that the 2009 Bonds were being issued to (i) pay a portion of the cost of the Hotel Redevelopment Project and (ii) to pay the Costs of Issuance of the 2009 Bonds.

37.     The 2009 Tax Exemption Certificate estimated that of the $3 million expected to be raised through the issuance of the 2009 Bonds, approximately $1.749 million would be used for the acquisition of land for the Hotel Redevelopment Project, approximately $835,000 would be used for rehabilitation costs associated with the Hotel Redevelopment Project, $150,000 would be used for an underwriter's discount, and approximately $276,000 would be used for costs of issuance of the 2009 Bonds.

38.     Like the 2008 Bonds, the 2009 Bonds were not general obligation bonds and were not to be repaid to investors from the general coffers of Harvey.  Instead, according to the 2009 Tax Exemption Certificate, the bonds were payable solely from the incremental tax revenue generated by a redevelopment project area within the City of Harvey Center Street Tax Increment Finance District (the "Harvey TIF District"), where the Hotel Redevelopment Project was located.

39.     Illinois law authorizes the use of tax increment financing, known as "TIF," to redevelop "blighted," "conservation," or "industrial park conservation areas" by financing redevelopment project costs with incremental property tax revenues. Incremental property tax revenue is derived from the increase in the equalized assessed

valuation of real property within a redevelopment project area over and above the equalized assessed valuation in effect at the time the redevelopment project area is established.

40. After receiving Harvey's representations in the 2009 Tax Exemption Certificate about how proceeds from the 2009 Bond Offering would be used, and how tax revenues would be generated to repay bondholders, a single investor purchased a total of $3 million of 2009 Bonds in approximately August 2009.

**D. The City of Harvey's Issuance of 2010 Bonds**

41. In or about September 2010, the City of Harvey conducted a municipal bond offering (the "2010 Bond Offering") to sell $5,000,000 of Series 2010 Bonds (the "2010 Bonds").

42. As part of the 2010 Bond Offering, the City of Harvey provided to potential investors an Official Statement ("2010 Official Statement") with information regarding the offering. The 2010 Official Statement was signed by Harvey's Mayor and City Clerk on behalf of Harvey.

43. The 2010 Official Statement stated that the 2010 Bonds were being issued to finance: (i) the reimbursement of the Developer, for eligible costs for the Hotel Redevelopment Project; (ii) the reimbursement of the City for advances made to the Developer; (iii) payment of bond issuance expenses; and (iv) future costs for the Hotel Redevelopment Project.

44. The 2010 Official Statement estimated that of the $5 million expected to be raised through the issuance of the 2010 Bonds, approximately $4.078 million would be used for a deposit to a project fund for the Hotel Redevelopment Project, $500,000

would be used for a deposit to a debt service reserve fund, and approximately $421,000 would be used for costs of issuance of the 2010 Bonds, including paying agent fees, underwriter's discount, legal fees, printing, and other miscellaneous costs of issuance.

45.     Like the 2008 Bonds and the 2009 Bonds, the 2010 Bonds were not general obligation bonds and were not to be repaid to investors from the general coffers of Harvey.  Instead, according to the 2010 Official Statement, the bonds were payable solely from the incremental tax revenue generated by a redevelopment project area within the Harvey TIF District where the Hotel Redevelopment Project was located.  The 2010 Official Statement represented in pertinent part: "The Bonds are limited obligations of the City, payable solely from and secured by the Incremental Taxes and certain other moneys held under the Bond Ordinance."  Thus, as with the 2008 Bonds and the 2009 Bonds, the Hotel Redevelopment Project, and the funding and progress of the project, would affect the amount of incremental tax revenue available to serve as the sole source of funds for repayment to investors in the 2010 Bonds.

46.     After receiving Harvey's representations in the 2010 Official Statement about how proceeds from the 2010 Bond Offering would be used, and how tax revenues would be generated to repay bondholders, a single investor purchased a total of $5 million of 2010 Bonds.

**E.      Harvey's and Letke's Scheme to Misuse Bond-Related Proceeds and Harvey's Misrepresentations to Investors**

47.     From 2008 to the present, Harvey and Letke have engaged in a scheme to divert bond proceeds for improper purposes, including undisclosed payments to Letke beyond what was disclosed in the bond offering documents, payroll for the City of Harvey, and other purposes unrelated to the Hotel Redevelopment Project.  As part of the

scheme, Harvey made misrepresentations and omissions to investors about how bond proceeds would be used and the risks associated with investments in Harvey's municipal bonds.

48.     In August 2008, a title company for the Hotel Redevelopment Project disbursed $400,000 to Letke & Associates, which the offering documents for the 2008 Bonds disclosed as the firm's fee for acting as a financial adviser to Harvey for the offering.

49.     All of the 2008 Bond Proceeds went to pay for past due amounts on the Hotel Redevelopment Project and none went, as it stated in the 2008 Official Statement, to the "rehabilitation of the facilities located on the" Property to provide the full-service Holiday Inn hotel and conference center.  Approximately $3.5 million of bond proceeds were paid on past due loans, $900,000 went for past due real estate taxes, and approximately $1 million was for unpaid construction related costs.

50.     In addition, in violation of the 2008 Development Agreement with the City, of the approximately $1 million in 2008 Bond Proceeds that went to unpaid construction costs, $502,000 was disbursed to a construction company that the Developer controlled.  Letke & Associates, as the accountant and bookkeeper for both the Developer personally and for the Hotel Redevelopment Project, was aware of this $502,000 payment.

51.     On February 17, 2009, an employee of Letke & Associates that worked from an onsite office at the City of Harvey emailed Letke, advising him, to the extent he did not already know, that the City was strapped financially.  The employee told Letke that in order to pay water bills, health insurance and payroll, the City might "have to dip

into bond money." The employee then suggested that it might be better to use restricted funds rather than TIF bond proceeds because "[t]here's the whole tax exempt bond money being used for taxable items (operations) to be considered."

52. On February 25, 2009, shortly after the employee emailed Letke abut the City's lack of funds, the City transferred $290,000 from a TIF District fund to its general operations account and then used the money to make payroll.

53. As part of Harvey's and Letke's participation in the scheme to divert bond- related proceeds, in July 2009, the City of Harvey, through Letke and another Harvey official, sent $1.5 million from Harvey to a Letke & Associates escrow account. Letke & Associates then paid the Developer $1 million. After receiving this payment, the Developer made a $70,000 undisclosed payment to Letke and paid $100,000 to a woman that had no apparent connection to the Hotel Redevelopment Project.

54. In August 2009, as noted above, the City of Harvey distributed the 2009 Tax Exemption Certificate to investors as part of its issuance of the 2009 Bonds. The 2009 Tax Exemption Certificate stated that the purpose of the bonds was to provide funding for the Hotel Redevelopment Project and represented that repayment of the 2009 Bonds would be affected by the funding and progress of the Hotel Redevelopment Project. The 2009 Tax Exemption Certificate omitted to state that the Developer of the Hotel Redevelopment Project had misused a portion of the proceeds from the 2008 Bond Offering, as well as other City proceeds, by making undisclosed payments to Letke, the Developer himself, and an unrelated woman, as set forth in the preceding paragraphs herein.

14

55. In August 2009, the Mayor of the City of Harvey directed the underwriter for the 2009 Bond Offering to disburse $72,000 to Letke & Associates for its role as a financial adviser to Harvey on the Offering.

56. The City of Harvey materially misled investors by, among other things, stating in the 2009 Tax Exemption Certificate that Harvey was issuing the bonds for the Hotel Redevelopment Project while omitting to state that bond-related and other proceeds earmarked for the Hotel Redevelopment Project already had been misused.

57. In August 2009, as part of the scheme to divert bond proceeds, the City of Harvey used $600,000 in 2009 Bond proceeds for the City of Harvey's general expenses, and not for the Hotel Redevelopment Project. On August 9, 2009, $600,000 of 2009 Bond proceeds was transferred to the City of Harvey's general bank account. On that same day, the City withdrew $420,000 from its general bank account to meet Harvey's payroll obligations.

58. In September 2009, the City of Harvey transferred $150,000 to the Developer. The Harvey City Council resolution authorizing this payment characterized this payment as a loan to the Developer. The City's Director of Planning and Development emailed a memorandum entitled "Release of TIF Funds" to the Comptroller's office, the Mayor, the assistant to the Mayor, and the City's Economic Development and Finance Council Committees. The City employee cautioned that the purported loan had "no request for funds, paperwork, no itemization of what the monies will be utilized for and there is no justification given that the monies will meet state regulations regarding TIF eligible expenses." She requested that a stop payment be placed on the $150,000 check, "but to no avail."

59.     In November 2009, the City of Harvey transferred an additional $100,000 to the Developer.  The City does not appear to have received any documentation verifying that the $100,000 met state regulations regarding TIF eligible expenses.

60.     In February 2010, in another act in furtherance of the scheme to divert bond proceeds, the City of Harvey used an additional $300,000 in 2009 Bond proceeds for the City of Harvey's general expenses, not for the Hotel Redevelopment Project.  On February 12, 2010, $300,000 of 2009 Bond proceeds was transferred to the City of Harvey's general bank account.  It appears that Harvey used this money for Harvey's general operations.

61.     Also in February 2010, the Developer obtained a loan for $2.2 million ostensibly for the Hotel Redevelopment Project.  In so doing, the Developer placed a lien on the Property without prior authorization from the City, as required in the 2008 Development Agreement and 2009 Redevelopment Agreement.  Letke apparently was aware that the Developer placed this lien on the property, because he is the registered agent for the Developer's companies and made filings with the Illinois Secretary of State relating to the loan.

62.     The Developer paid Letke & Associates an undisclosed $30,000 from the $2.2 million loan proceeds received in February 2010.

63.     In September 2010, as noted above, the City of Harvey issued the 2010 Bonds and distributed the 2010 Official Statement to investors in the bonds.  The City of Harvey received $1 million of the 2010 Bond Proceeds.  It is possible this money was intended to repay the City in part for the $1.5 million loan it made to the Developer in July 2009.  However, no documentation appears to exist supporting either the $1 million

transfer or the portion of the $1.5 million loan that was diverted to Letke and the woman with no apparent connection to the Hotel Redevelopment Project, as discussed above.

64.     As noted above, the 2010 Official Statement stated that the purpose of the bonds was to provide funding for the Hotel Redevelopment Project and represented that repayment of the 2010 Bonds would be affected by the funding and progress of the Hotel Redevelopment Project.  The 2010 Official Statement also set forth a variety of Risk Factors related to the risk that the Harvey TIF District would not generate a sufficient amount of pledged taxes such that there would be sufficient money to pay principal and interest on the bonds when due.  But the 2010 Official Statement omitted to state that the a portion of the proceeds from Harvey's two previous bond offerings, the 2008 and 2009 Bond Offerings, already had been diverted from the Hotel Redevelopment Project and the TIF District.

65.     The City of Harvey materially misled investors by, among other things, stating in the 2010 Official Statement that Harvey was issuing the bonds for the Hotel Redevelopment Project while omitting to state that bond-related proceeds from the 2008 and 2009 Bond Offerings and other proceeds earmarked for the Hotel Redevelopment Project already had been misused.

66.     The City of Harvey also materially misled investors by, among other things, describing in the 2010 Official Statement the various risks that the Harvey TIF District would be unable to generate sufficient revenues to repay investors while omitting to state that the risk that Harvey would misuse bond proceeds had already occurred with respect to the 2008 and 2009 Offerings as well as with other proceeds earmarked for the Hotel Redevelopment Project within the Harvey TIF District.

17

67.     Also in September 2010, the Mayor of the City of Harvey directed the trustee for the 2010 Bond Offering to disburse $75,000 of bond proceeds to Public Funding Enterprises for Letke's role as a financial advisor to Harvey on the Offering.

68.     In September 2010, as part of Harvey's and Letke's participation in the scheme to divert bond proceeds, the City of Harvey transferred $1.87 million of the $5 million 2010 Bond proceeds to the Developer.  The Developer then used $1,075,000 to pay off an existing loan for the project and $100,000 for an undisclosed payment to Letke & Associates.  In violation of the 2008 Development Agreement and the 2009 Redevelopment Agreement, the Developer also used an additional $100,000 of the $1,075,000 for a payment to a construction company the Developer controlled.

69.     In October 2010, as part of Letke's participation in the scheme to divert bond proceeds, the Developer made an additional undisclosed $49,375 payment to Letke & Associates and an additional $75,000 prohibited payment to the construction company the Developer controlled.

70.     In June 2011, as part of Harvey's and Letke's participation in the scheme to divert bond proceeds, the City of Harvey authorized a $250,000 loan to the Developer. The $250,000 loan was transferred from an account holding proceeds from the $5 million 2010 Bond Offering.  Documentation to support that the loan met state regulations regarding eligible TIF expenses appears not to exist.  The Developer then made a $15,000 undisclosed payment to Letke & Associates, made a $30,000 prohibited payment to a construction company controlled by the Developer, and made a $57,000 prohibited payment to the Developer's majority owner.

71.     In October 2011, as part of Harvey's participation in the scheme to divert bond proceeds, the City of Harvey used $959,000 in 2010 Bond proceeds for the City of Harvey's general expenses, not for the Hotel Redevelopment Project.  The Mayor signed a Project Fund Disbursement request for the funds in which he certified, among other things, the following:

    a.   "In connection with the requested disbursement, [the City of Harvey] hereby certifies as follows:

        i.   This written requisition is for the payment of costs in connection with the issuance of the above-referenced Bonds or the *[acquisition or construction]* of the Project or reimbursement for costs of acquisition or construction of the Project.

       ii.   The [City of Harvey] and Developer have each complied with all requirements under the Redevelopment Agreement relating to the disbursement request.

      iii.   The City Engineer has inspected the work for which payment is requested and has confirmed that the work for which payment is requested has been completed and payment therefore should be approved."

On the date the Mayor signed the disbursement request, the Hotel Redevelopment Project already was in foreclosure.

72.     The $959,000 of 2010 Bond proceeds was transferred to the City of Harvey's general bank account.  Harvey then used this money for its general operations.

As the Comptroller for Harvey, Letke was responsible for recording these transactions, with assistance from employees of Letke & Associates.

**F.      The Failure of the Hotel Redevelopment Project**

73.      As of 2014, as the result of Harvey's and Letke's participation in the scheme to divert bond related proceeds, the Hotel Redevelopment Project has turned into a fiasco for bond investors and Harvey residents.  According to news reports, the proposed Holiday Inn hotel and conference center stands as a decrepit shell. The hotel's façade has many holes in it, and the interior of the hotel appears gutted in places, with dangling wires and exposed studs, according to news reports.

**G.      Harvey's Misrepresentations to Underwriters About the Absence of Conflicts Of Interest**

74.      In connection with the 2009 and 2010 Bond Offerings, the City of Harvey executed a General Closing Certificate.  The Mayor signed the 2009 and 2010 General Closing Certificates, along with the City Clerk.

75.      The City of Harvey provided the General Closing Certificate to the underwriters for the 2009 and 2010 Bond Offerings in connection with the purchase of the bonds.

76.      The General Closing Certificates for the 2009 and 2010 Bond Offerings, stated, in pertinent part, that "[n]of member of the City Council, no officer of the City, and no managerial or supervisory employee of the City" is "interested, either directly or indirectly, in his own name or in the name of any other person, association, trust or corporation" in the borrowing evidenced by the Bonds, or the contract or contracts for the acquisition, construction and equipping of the Hotel Redevelopment Project.

77.    When the City of Harvey issued these General Closing Certificates in 2009 and 2010, Letke, as the Comptroller for Harvey, was an "officer" of Harvey. He also was a "managerial or supervisory employee of Harvey, supervising the accounting and financial employee of Harvey. Based on the undisclosed payments to Letke and/or his businesses described herein, Letke was "interested, either directly or indirectly" in the borrowing evidenced by the Bonds, or the contract or contracts for the acquisition, construction and equipping of the Hotel Redevelopment Project.

78.    In light of Letke's undisclosed interests in the borrowing evidenced by the 2009 and 2010 Bonds, and in the contracts for the Hotel Redevelopment Project, Harvey's representations to the underwriters in the 2009 and 2010 General Closing Certificates about the absence of conflicts of interest were materially misleading.

**H.    Harvey's Planned Issuance of 2014 Bonds**

79.    Harvey intends to issue the 2014 Proposed Bond Offering. As part of this proposed offering of bonds (the "Proposed 2014 Bonds"), Harvey has prepared a draft Preliminary Limited Offering Memorandum (the "2014 Draft Offering Memorandum"). The 2014 Draft Offering Memorandum has been distributed to potential investors in the Proposed 2014 Bonds.

80.    The 2014 Draft Offering Memorandum states that the Proposed 2014 Bonds will be issued to provide funds for: (i) construction and equipping of a 43,500 square foot grocery store (the "Grocery Store Development Project") in a TIF district within the City of Harvey (the "Second Harvey TIF District"); (ii) reimbursement of the developer of the Grocery Store Development Project for a portion of the costs of the project; and (iii) other public infrastructure and project costs.

81.     Like the 2008 Bonds, 2009 Bonds, and 2010 Bonds, the Proposed 2014 Bonds are not general obligation bonds and are not to be repaid to investors from the general coffers of Harvey.  Instead, according to the 2014 Draft Offering Memorandum, the bonds are to be payable solely from the incremental tax revenue generated by the tax increment redevelopment project areas within the Second Harvey TIF District where the Grocery Store Development Project will be located.  Thus, the funding and progress of the Grocery Store Development Project would affect the amount of incremental tax revenue available to serve as the sole source of funds for repayments to investors in the Proposed 2014 Bonds.

82.     The 2014 Draft Offering Memorandum also sets forth a variety of risk factors primarily related to the risk that the real estate within the Second Harvey TIF District, such as the proposed Grocery Store Development Project, would not generate sufficient revenues to pay principal and interest to bondholders.

83.     The 2014 Draft Offering Memorandum omits to state that the City of Harvey had misused a portion of the proceeds from three previous bond offerings – the 2008, 2009, and 2010 Bond Offerings – as well as other proceeds directly from the City of Harvey, that also purportedly were for the purpose of providing funding for a redevelopment project within a Harvey TIF District, namely, the Hotel Redevelopment Project.

84.     The City of Harvey has materially misled prospective investors in the 2014 Proposed Bond Offering by, among other things, stating in the 2014 Draft Offering Memorandum that Harvey intends to issue the bonds for the Grocery Store Development Project within the Second Harvey TIF District while omitting to state that bond-related

proceeds from the 2008, 2009, and 2010 Bond Offerings and other proceeds earmarked for similar projects within another TIF District already had been misused.

85.     The City of Harvey also has materially misled prospective investors by, among other things, describing in the 2014 Draft Offering Memorandum the various risks that the Second Harvey TIF District would be unable to generate sufficient revenues to repay investors while omitting to state that the risk that Harvey would misuse bond proceeds had already occurred with respect to the 2008, 2009, and 2010 Offerings.

86.     Unlike the prior offerings in 2008, 2009 and 2010, where a third party prepared a feasibility study for the offerings, the feasibility study for the 2014 project was done by Letke through Public Funding Group, LLC.

87.     Letke has been involved in the drafting of the 2014 Draft Offering Memorandum.  In addition, he is acting as a financial adviser to Harvey for the proposed issuance through Public Funding Group, LLC and will receive a fee if the bond issuance is completed.

## I.     The City of Harvey's Current Financial Condition

88.     Harvey's last audited financial statements were dated April 30, 2008.  In January 2014, the Illinois State Comptroller's Office instructed an auditor to bring the City into compliance with State law regarding annual audited financial statements.

89.     Letke wrote a recent document stating that Harvey's current financial condition is grave.  In the document, Letke predicts that in July 2014, Harvey would be unable to pay its bills, and by August 2014, Harvey would not be able to make payments to bondholders.  Letke described Harvey's financial condition as a "crisis."

## COUNT I

### Violations of Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)]
### and Rules 10b-5(a) and (c) [17 C.F.R. 240.10b-5(a) and (c)] thereunder

### (All Defendants)

90.     The Commission realleges and reincorporates by reference each and every

allegation set forth above.

91.     By virtue of the conduct alleged herein, the City of Harvey and Letke,

directly or indirectly, singly or in concert with others, by use of the means or

instrumentality of interstate commerce, or by the use of the mails, or of the facilities of a

national securities exchange, in connection with the purchase or sale of securities, have

employed devices, schemes and artifices to defraud and/or engaged in acts, practices and

courses of business which operated or would have operated as a fraud or deceit upon

purchasers of securities and upon other persons.

92.     Harvey and Letke knew or were reckless in not knowing of the activities

described herein.

93.     By reason of the foregoing, Harvey and Letke each violated, and unless

enjoined will likely again violate, Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)]

and Rules l0b-5(a) and (c) thereunder [17 C.F.R. § 240.10b-5(a) and (c)].

## COUNT II

### Violations of Section 10(b) of the Exchange Act  [15 U.S.C. §78j(b)]
### and Rule 10b-5(b) [17 C.F.R. 240.10b-5(b)] thereunder

### (The City of Harvey Only)

94.     The Commission realleges and reincorporates by reference each and every

allegation set forth above.

95.     By virtue of the conduct alleged herein, the City of Harvey, directly or indirectly, singly or in concert with others, by use of the means or instrumentality of interstate commerce, or by the use of the mails, or of the facilities of a national securities exchange, in connection with the purchase or sale of securities, knowingly or recklessly, has made untrue statements of material facts and omitted to state material facts necessary in order to make statements made, in the light of the circumstances under which they were made, not misleading.

96.     Harvey knew or was reckless in not knowing of the activities described herein.

97.     By reason of the foregoing, Harvey violated, and unless enjoined will likely again violate, Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule l0b-5(b) thereunder [17 C.F.R. § 240.10b-5(b)].

## COUNT III

### Violations of Sections 17(a)(1) and (3) of the Securities Act
### [15 U.S.C. § 77q(a)(1) and (3)]

### (All Defendants)

98.     The Commission realleges and reincorporates by reference each and every allegation set forth above.

99.     The City of Harvey and Letke, directly or indirectly, singly or in concert with others, in the offer and sale of securities, by use of the means and instruments of transportation and communication in interstate commerce and by use of the mails, have employed devices, schemes or artifices to defraud and/or engaged in transactions, practices or courses of business which operate or would operate as a fraud or deceit upon the purchaser.

100.     Harvey and Letke knew or were reckless or were negligent in not knowing of the activities described herein.

101.     By reason of the foregoing, Harvey and Letke have each violated, and unless enjoined will likely again violate, Sections 17(a)(1) and 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(1) and § 77q(a)(3)].

## COUNT IV

**Violations of Section 17(a)(2) of the Securities Act**
**[15 U.S.C. § 77q(a)(2)]**

**(The City of Harvey Only)**

102.     The Commission realleges and reincorporates by reference each and every allegation set forth above.

103.     The City of Harvey, directly or indirectly, singly or in concert with others, in the offer and sale of securities, by use of the means and instruments of transportation and communication in interstate commerce and by use of the mails, has obtained money or property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

104.     Harvey knew or was reckless or was negligent in not knowing of the activities described herein.

105.     By reason of the foregoing, Harvey Letke has violated, and unless enjoined will likely again violate, Sections 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)].

**RELIEF REQUESTED**

**I.**

**(Declaratory Judgment)**

Issue findings of fact and conclusions of law that the Defendants committed the violations charged and alleged herein.

**II.**

**(Injunctive Relief Against Future Securities Law Violations)**

Enter an Order of Permanent Injunction restraining and enjoining Defendants, their officers, agents, servants, employees, attorneys and those persons in active concert or participation with Defendants who receive actual notice of the Order, by personal service or otherwise, and each of them from, directly or indirectly, engaging in the transactions, acts, practices or courses of business described above, or in conduct of similar purport and object, in violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder and Section 17(a) of the Securities Act [15 U.S.C. § 77o(a)];

**III.**

**(Other Injunctive and Interim Relief)**

Grant other appropriate injunctive emergency interim relief, consistent with Rule 65(d) of the Federal Rules of Civil Procedure, as well as permanent injunctive relief, to protect investors, including: (i) an Order restraining and enjoining Harvey, its officers, agents, servants, employees, attorneys and those persons in active concert or participation with Harvey who receive actual notice of the Order, by personal service or otherwise, and

each of them from, directly or indirectly, engaging in the offer or sale of municipal securities for a period of 5 years unless, prior to doing so, it retains an Independent Consultant appointed by the Court, the Independent Consultant reviews Harvey's municipal security disclosure policies and procedures and its procedures, controls, and personnel for the proper use of bond proceeds, the Independent Consultant makes any recommendations for improvement, and Harvey implements any such recommendations for improvement; (ii) an Order restraining and enjoining Letke, his officers, agents, servants, employees, attorneys and those persons in active concert or participation with Letke who receive actual notice of the Order, by personal service or otherwise, including without limitation Letke & Associates, Alli Financial, Public Funding Group LLC, and Public Funding Enterprises) and each of them from, directly or indirectly, participating in the offer or sale of municipal securities; (iii) a Temporary Restraining Order and Order of Preliminary Injunction against Defendants restraining and enjoining them as set forth above in this Section and in Section II of the Relief Requested; (iv) an Order freezing the assets of Letke and the businesses he controls; (v) an Order requiring the Defendants to provide expedited discovery, as requested by the SEC

## IV.

### (Disgorgement of Ill-Gotten Gains)

Issue an Order requiring Letke to disgorge the ill-gotten gains that he received, directly or indirectly, as a result of his wrongful conduct, including prejudgment interest.

## V.

### (Civil Penalties)

28

Issue an Order imposing appropriate civil penalties upon Letke pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] and Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)].

## VI.

### (Retention of Equitable Jurisdiction)

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## VII.

### (Other Relief)

Grant such orders for further relief the Court deems appropriate.

### JURY DEMAND

Pursuant to Rule 39 of the Federal Rules of Civil Procedure, the SEC demands that this case be tried before a jury.

Respectfully submitted,

/s/Eric M. Phillips_____
Eric M. Phillips
Eric A. Celauro
Sally J. Hewitt
Attorneys for Plaintiff
Securities and Exchange Commission
175 W. Jackson Blvd., Suite 900
Chicago, IL 60604
Telephone: (312) 353-7390
Facsimile: (312) 353-7398

Dated: June 24, 2014